# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:22CR318 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | **SENTENCING MEMORANDUM** |
| | ) | **OF DEFENDANT** |
| DOUGLAS FISCHBACK, | ) | |
| | ) | |
| Defendant. | ) | |

This case is set for sentencing of Douglas Fischback, on one count of filing a False Tax Return under 26 U.S.C. § 7206(1).  The purpose of this Memorandum is twofold.  First, there are matters relevant to the sentencing of which the Court should be aware which have not been fully dealt with in the Presentence Investigation Report ("PSR").  Second, is to respectfully request that this Court impose a sentence below the recommended guideline due to the factors under 18 U.S.C. § 3553 and the unique circumstances present in this case.  Such a sentence is statutorily authorized and would be sufficient without being greater than necessary to accomplish the goals set forth in 18 U.S.C. § 3553(a) after considering the advisory sentencing guidelines and the other unique grounds present in this case.

Nothing in this Memorandum is meant as a denial of responsibility by Douglas Fischback. In fact, Mr. Fischback has accepted his responsibility by facing the charges, entering his plea, and making full restitution in substantial amount.

## LAW AND ARGUMENT

The touchstone of federal sentencing is the legislative mandate that courts must impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a)(2). *United States v. Booker*, 543 U.S. 220, 125 S.Ct. at 738 (2005); *United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006); *citing, United States v. Foreman*, 436 F.3d 638, 644 n. 1 (6th Cir.2006) (emphasis in original).

The Sixth Circuit has set forth a "procedure" for post-Booker sentencing determinations.  "[O]nce the appropriate advisory Guideline range is calculated, the district court throws this ingredient into the section 3553(a) mix." *Collington, supra., citing, United States v. McBride*, 434 F.3d 470, 476 (6th Cir.2006).  18 U.S.C. § 3553(a) instructs a district court to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [Section 3553(a)(2)]" which include:

1.      To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

2.      To afford adequate deterrence to criminal conduct;

3.      To protect the public from future crimes of the defendant; and

4.      To provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

Further, 18 U.S.C. §§ 3553(a)(1), (3)-(7), instruct that the district court should also consider the nature and circumstances of the offense, the characteristics of the defendant, the kinds of sentences available, the sentencing guidelines range, policy statements from the Sentencing Commission, the need to avoid sentencing disparities, and the need to provide

restitution to the victims.

Importantly, a sentencing court may not presume that the Guideline range is reasonable. *Gall v. United States*, 552 U.S 38, 128 S.Ct. 586, (2007); *United States v. Olds*, 309 Fed. Appx. 967, 976 (6th Cir. 2009).

Although the Sentencing Guidelines are advisory, the Supreme Court nevertheless has instructed that the sentencing range recommended thereunder must be "the starting point and initial benchmark" of the district court's sentencing analysis. *Gall v. United States*, 552 U.S 38, 128 S.Ct. 586, 596 (2007); *see also United States v. Bolds,* 511 F.3d 568, 579 (6th Cir. 2007).

While the Guidelines are the starting point, they are not the final word.  The factors under 18 U.S.C. § 3553(a) must be analyzed in order to perform the individualized sentencing required by the statute.

In this case, evaluating the factors set forth in 18 U.S.C. § 3553(a)(2) to arrive at a "sentence sufficient, but not greater than necessary," to comply with the purposes of that section, establishes that a sentence of probation with a period of home confinement will fulfill the statutory mandate.

## I.  The Advisory Guideline Computation

There is a Plea Agreement in this case.  The parties' Plea Agreement, at page 5, does contain a summary of the guideline computation with which the Defendant agrees.

The Guidelines computation is determined under USSG 2T1.4(a)(1) and 2T4.1(F). Using a loss amount of $132,002, the base offense level is 16 since the loss amount is greater than $100,000 and less than $250,000. See, USSG § 2T4.1(F).  The Plea Agreement adds two level under USSG 2T1.4(b)(1). After reduction for acceptance of responsibility of 3 levels

3

under USSG 3E1.1(b), the Total Adjusted Offense Level is 15, which is in Zone "D" of the guidelines.  The PSR finds that the Defendant is in Criminal History Category (CHC) III, which recommends a sentencing range of 24-30 months. The Defendant objects to CHC being III and believes that CHC I or, possibly CHC II is the appropriate level.

The advisory guideline fine range is $7,500-$75,000.  USSG 5E1.2(c)(3).

Restitution is also provided for in the Plea Agreement.  The Defendant has agreed to pay restitution in the amount of $132,002, plus interest computed under 26 U.S.C. § 6621 (IRS Interest). Mr. Fischback has paid the restitution already with funds that he borrowed.

Finally, In Paragraph 42, on page 9 of the PSR, it states that details of the settlement between Mr. Fischback and the Company were requested, "however, no information was received."  This is incorrect.  The Confidential Settlement Documents were supplied along with the Defendant's Objections to the PSR on September 1, 2022. (Exhibit A)

### A.    Criminal History Category

We believe that the assignment of Criminal History Category III (CHC III) to Mr. Fischback is erroneous and substantially overstates the seriousness of Mr. Fischback's criminal history, which consists of one Physical Control conviction and one Driving under the Influence conviction. The first of those offenses occurred on the day of Mr. Fischback's mother's funeral and was largely attributable to his emotional state on that day and the days leading up to that day.  Second, as Mr. Fischback was not convicted of DUI, but rather Physical Control, it should not count. U.S.S.G § 4A1.2(c) only applies to the offense of conviction.  Application Note 5 makes this clear, "Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted, without regard to how the

offense is classified." (emphasis supplied) Since Mr. Fischback was only convicted of Physical Control, the elements of which do not require operation of a vehicle. *See*, O.R.C. 4511.194 (""Physical control" means being in the driver's position of the front seat of a vehicle or in the driver's position of a streetcar or trackless trolley and having possession of the vehicle's, streetcar's, or trackless trolley's ignition key or other ignition device.") In Ohio, a conviction for Physical Control is not a substantially equivalent offense to OVI. *State v. Justus*, 2009-Ohio-137, P14, 2009 Ohio App. LEXIS 146, *7, 2009 WL 98445. Finally, the 2014 Offense is remote enough that it should not count.

CHC III also over represents the likelihood that Mr. Fischback will re-offend and that he would re-offend in that the nature of his criminal history is sufficiently distinct in seriousness and in kind from the instant offense, such that they should not be included in calculating Mr. Fischback's criminal history category in this case. *United States v. Fisher*, 669 F. Supp. 2d 1013 (US DC SWD ND 2009); *United States v. Miranda*, 979 F. Supp. 1040 (US DC NJ 1997); *United States v. Walker*, 252 F. Supp. 3d 1269 (US DC UT 2017). For these reasons, we believe that the appropriate CHC for Mr. Fischback is CHC I and that the applicable advisory guideline range should be 18-24 months.

II.     The Factors Under 18 U.S.C. § 3553(a).

**1.  The Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

**Nature and Circumstances of the Offense**

This case presents a story as old as Cain and Able.  While here the brothers (twins) have resolved their differences and no one has been killed, the IRS, made party to this matter by virtue of Title 26 of the U.S. Code, has asserted its rights that arose from their dispute by way of Mr. Fischback's deficient tax reporting.  Fortunately, the IRS too has been made whole through Mr. Fischback's payment of restitution with interest as follows:

| Fischback Restitution Paid | 2014 | 2015 | 2016 | 2017 | Total |
|---|---|---|---|---|---|
| Tax | $49,624 | $20,494 | $13,586 | $48,028 | |
| Interest | $16,305 | $5,917 | $3,302 | $9,088 | |
| | $65,929 | $26,411 | $16,888 | $57,116 | $166,344 |

All that remains to be addressed is what should the Court, made party to the brothers' rivalry by way of this case, do that is sufficient, but not greater than necessary, to accomplish the goals set forth in 18 U.S.C. § 3553(a)?

Mr. Fischback and his twin brother were always close, and always competitive, the epitome of the classic sibling rivalry.[1]  Douglas, having been born second was always considered "the little brother."  They attended college together, but after college started to seek their own paths.  While they tried their best to choose their own paths, their commonality was unmistakable as they both wound up in the construction industry and both in construction and/or construction

---

[1] See, eg., *Adult Sibling Rivalry*, Jane Mersky Leder, pub. 1/1/1993, last reviewed 6/9/2016, Psychology Today, https://www.psychologytoday.com/intl/articles/199301/adult-sibling-rivalry last checked 9/19/2022

project management.

At one point, many years away from college, Douglas mentioned to his brother that he was interested in changing his work situation.  Douglas was asking if his brother was aware of any companies that were in need of an experienced project manager.  His brother, who was a partner in a growing construction company, suggested that Douglas come work "for" him. Sibling rivalries being what they are, the word "for" was a point of contention and Douglas said he would work "with" his brother, but not "for" him.  Doug was quite experienced and skilled in project management and his brother knew he could make a real contribution to the growing company.  So, they agreed that if Doug came there to work and it worked out, they would work "with" each other by Doug being made an owner as well.

Well, it worked. The business grew and the money followed. Douglas excelled at managing projects.  However, while *brothers* may see themselves as innate equals (especially twins) not all *owners* are equal and Doug and his brother were not equal owners.  The difference between the two labels is a point that would cause friction between the twins and would set Douglas on a path to this Courtroom.

While Doug was helping make the company a success, his personal life was moving at odd angles.  He was on his third marriage, his first being a young and impetuous affair and his second giving him two wonderful children, a daughter and a son.  His third was a case study in manipulation, a soul crushing, poisonous expedition that would push Mr. Fischback into the depths of depression and drive him from his previous relationships.  It would also enflame feelings of jealousy and envy that were just below the surface of the sibling rivalry with his twin brother.  Unfortunately, Mr. Fischback responded to these inputs like a twin child competing for

7

the attention of his parents – imprudently and childlike.

As the business grew, so did his brother's lifestyle. Large bonuses led to larger houses more expensive cars, and more grandiose vacations. Douglas' compensation grew, but nowhere near to the growth of his brother's. Doug's lifestyle was falling well behind that of his brother. The sibling rivalry was beginning to surface once again. Doug's wife also noticed that Doug's brother pulled ahead as well and she did not like it. She did not like it one bit and she was not bashful about making her displeasure known. Family holidays were always at the brother's house as it was bigger, fancier and better equipped to handle a crowd. Doug's wife especially didn't like this and, more importantly, she knew that, under his calm exterior Douglas did not like it either. She began to push and when she did, she pushed hard. She forbade their participation in anything related to his brother. And when that rivalry stuck its' head up she pulled it out and once in had she wielded it with the precision of a surgeon. Mr. Fischback and his wife built a bigger house, one they could hardly afford. When it was completed, she insisted they sell it and immediately begin construction of a bigger one – her "dream house" as she used to call it– one they really could not afford. And, when it all came crashing down, her last words to Mr. Fischback were "Now I'll never have my dream house."

While his wife fanned the flames, it did not take too much as the rivalry was always there and it was useful to Mr. Fischback to justify what he decided was fair to restore some equality between he and his brother and to satisfy the rapacious demands of his wife. He concocted a scheme to get funds and, once he got them, he did not include them as income on his tax returns causing a tax liability that he failed to address.[2]

---

2 At one point, prior to the advent of the IRS criminal investigation, he had hired a qualified professional to help him amend his returns or take other action, but all of his assets were frozen by the divorce court during the divorce from

Mr. Fischback is deeply sorry for his actions and is embarrassed by what he has done. He has resolved matters with his brother, leaving the employ and selling his interest back to the company, less what he got by way of his actions.  He is receiving payments over time for the difference. He is divorced from his third wife.  He has started an entirely new life.  He used his retirement funds to purchase a business in North Carolina that constructs docks and things of that nature.  He is doing well at it.  He has remarried and his new wife, a recently retired school teacher who is supportive of him.  Her family has ties to the area in North Carolina where Mr. Fischback purchased his business and they intend to move there permanently (he has been there since he purchased the business and has come back and forth to sell his house and help his wife). He is, as close as one can ever be, a new man with a new life.

Would this have happened if he were not working "with" his brother?  I seriously doubt it.  Save for the two misdemeanors noted in the PSR, Mr. Fischback has lived an otherwise honest life and has no other issues civil or criminal.

**History and Characteristics of the Douglas Fischback**

Douglas Fischback is a 59-year old, college educated father of two children.  He was born and raised in Rocky River, Ohio. He is one of three children, including his twin brother and his older sister who passed in 2020.  He has had "uneven" success in marriage, being on his fourth marriage and having his third marriage drive him to counselling and beyond.  He takes medicine for high blood pressure and high cholesterol and he continues to take medicine due to the depression and mental effects of his third marriage.

Mr. Fischback has worked in the construction industry since he graduated from Bowling Green University.  He has never made his living through illegal means.  He currently owns and

---

his third wife.  By the time that resolved, it was too late and he was left with no cash to do anything about it.

operates a construction company in North Carolina that specializes in docks and ancillary equipment and construction to docks.  He purchased that company last year and employs eight (8) full-time workers and even more part-timers/subcontractors.

Mr. Fischback has no prior experience with the criminal justice system save for two DUIs, one in 2014 and one in 2018 (the second in the wake of his third divorce).  The 2014 incident occurred on the day of his mother's funeral.  He has no struggles with alcohol or drugs. He is unassuming about himself. He recently remarried and together with his new wife, who supplied to downpayemnt, purchased a home in North Carolina.  While he has been going back and forth while selling his house, all of that is complete and he does not need to return to the Cleveland area any more. After making restitution in this case, he is comfortable, but not rich – one third of his net worth after restitution as shown in the PSR is attributable to the North Carolina home which equitably belongs to his wife as she made the downpayment on it.

The letters attached in Appendix A shed additional light on the history and characteristics of Mr. Fischback.  The letters from Mr. Fischback's children show how deeply Mr. Fischback's struggles were during his third marriage – it even drove a wedge between him and his children. They also demonstrate what a changed man he is after that marriage finally ended – his son working with him to learn the business and his daughter "seeing a version of my father that I had never witnessed yet" – a happy one.

From nearly every perspective, emotionally, geographically, from financial demands to relationships, the Douglas Fischback that stands before the court today is considerably different than the Douglas Fischback of 2017.   For Mr. Fischback's part, there is no need, desire or even opportunity to make the same mistake again.

2. **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment**.

Tax crimes are serious offenses.  However, they are nonviolent offenses.  The particular offenses in issue in this case do not require a period of incarceration as they are Class E felonies.  See, 18 U.S.C. §§ 3559(a)(5) and 3561(a).  Accordingly, the range of authorized punishment that is available to the Court is very broad.  The options available in the range of authorized punishment could be tailored to recognize the unique nature of this case and the factors at play.  Also, recognition can be given to the fact that Mr. Fischback has made full restitution with interest.

3. **The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct.**

A. **Specific Deterrence**

The facts of this case run contrary to the notion that Mr. Fischback poses any risk of recidivism.  He has only two prior misdemeanor offenses. He is industrious and has never made his living by illegal means.  He is 59-years old, an age at which the chance of recidivism drops dramatically.  Mr. Fischback has already faced the public embarrassment, shame and humiliation.  He has had to sit face-to-face with his brother whom he loves.  He has changed his life and moved away from his home.  He has made full restitution with interest.  He will now carry the black mark of a felony conviction for the rest of his life.

As explained above, Mr. Fischback no longer works with his brother.  He is no longer married to his poisonous wife.  He has started a new life in North Carolina far from the sibling rivalry with a new and supportive wife.  Specific deterrence has already been accomplished and, accordingly, a sentence below the guideline range is clearly sufficient but not greater than

11

necessary to achieve specific deterrence.

### B.    General Deterrence

The government has already achieved its goal of general deterrence.  Mr. Fischback has plead guilty to a felony.  He has made restitution with interest.  He has squared up with his brother. He has moved in part because of the embarrassment he feels from his brother and from the public in general.  While general deterrence is one of the most relevant goals in any case, it is still subject to the legislative command that a sentence must be *sufficient, but not greater than* necessary, to accomplish the goals of sentencing.

Overall, a sentence of probation, with a period of home confinement, would be sufficient, but not greater than necessary to accomplish the goal the general deterrence.

### 4.    The Kinds of Sentences Available.

The sentences available to this Court range are as follows:

1)    Probation: 0 to 5 years 18 U.S.C. § 3561(a) and (c)(1).
2)    Probation for the above stated terms coupled with a period of home confinement with or without electronic monitoring. 18 U.S.C. § 3563(b)(19)
3)    Probation for the term in paragraph 1, coupled with a period of community confinement at a facility such as Oriana House or working in community services. 18 U.S.C. §§ 3563(b)(11) and (12).
4)    Probation for the terms in paragraph 1, coupled with intermittent confinement with the Bureau of Prisons totaling no more than one year, during the first year of probation.  18 U.S.C. § 3563(b)(10).
5)    A sentence of imprisonment followed by a period of supervised release not to exceed three years.  18 U.S.C. § 3583(b)(2).

Each of these available sentences include the ability to impose a fine 18 U.S.C. § 3571(b).

Given the kinds of sentences available, a sentence below the advisory guideline range is authorized and would be sufficient, but not greater than necessary.

**III.     The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**.

A sentence well below the guideline range in this case, would not result in an unwarranted disparity when comparing Mr. Fischback's overall situation to others who engaged in similar conduct in this case.  The cases cited in the attached chart (Appendix B) as well as those cited below support that conclusion.

Of those cases, *United States v. Jaber*, is noteworthy as the amount of the tax loss was greater than the tax loss in Mr. Fischback's case ($222,000 vs $130,000) and full restitution was paid prior to sentencing. One significant difference is that Mr. Jaber was charged with, and plead guilty to, paying a bribe in addition to the tax offenses.  In contrast, Mr. Fischback was charged with no other offenses.  The defendant in *Jaber* was sentenced to three years of probation with four months of home detention and a $200,000 fine.  There is no indication of Mr. Jaber's overall financial condition in the documents appearing on the docket, but given the similarities in amount and tax periods as well as the absence of other charges, the *Jaber* case demonstrates that a sentence of probation with home confinement and a fine in this case would not result in an unwarranted disparity.

*United States v. Tomko*, 562 F.3d 558  (3rd Cir. 2008)(*en banc*), is also on point. In *Tomko*, the defendant plead guilty one count of tax evasion, in violation of 26 U.S.C. § 7201. Tomko, a general contractor, organized a tax evasion scheme that involved twelve different subcontractors and his general contracting company which occurred over a period of years from 1995 through 1998.  The tax loss of $228,557, more than is at issue in the case at bar, resulted in an advisory guideline offense level of 13, with a sentencing range of 12-18 months.  The district

court, after considering the arguments that a sentence below the advisory range was warranted due to 1) harm to innocent third parties due to the destructive effects incarceration would have on Tomko's business; 2) Tomko's charitable works and good deeds; 3) Tomko's extraordinary acceptance of responsibility and 4) a combination of those factors, sentenced Tomko to three years of probation, with the first year on home confinement, participation in an alcohol treatment program, 250 hours of community service and a $250,000 fine.

In *Tomko,* the court pointed to the following reasons for imposing a sentence below the advisory guideline range, which were:

1. The offense was not violent in nature;

2. The offense was not ongoing in nature (even though it involved 12 subcontractors who participated from 1995 through 1998);

3. The offense was not part of a larger pattern of criminal activity;

4. There were not identifiable victims of the offense;

5. The prior criminal history of the defendant – one prior conviction for boating while intoxicated;

6. Adequate deterrence to the defendant from future criminal conduct – one prior incident, but otherwise crime free life;

7. The need to protect the public – likelihood of recidivism was small.

*Tomko*, at 562-563.

The government appealed the district court's sentence and the Third Circuit affirmed the

sentence, finding "[t]he District court's reasons are also 'logical and consistent with the factors set forth in section 3553(a)." *Tomko,* at 571.

The case of *United States v. Rosenfield*, Case No. 1:14CR0034, USDC ND OH J. Adams, also demonstrates that no unwarranted sentencing disparity would arise from a non-custodial sentence here.  In *Rosenfield,* the defendant was a 70-year old attorney with no criminal history who had been married 49 years. Mr. Rosenfield had survived a bout with Type B Non-Hodgkin's Lymphoma. The tax loss in Mr. Rosenfield's case was $523,253, substantially more than in this case and placing Mr. Rosenfield at a level 17 after acceptance of responsibility at which level the recommended sentence was 24-30 months.  The Court sentenced Mr. Rosenfield to 5 years of probation and no fine (on account of the substantial unpaid restitution).  Mr. Fischback's tax loss is less than half of Mr. Rosenfield's and Mr. Fischback has made full restitution. *United States v. Rosenfield*, strongly supports a noncustodial sentence for Mr. Fischback.

A recent case in the Southern District of Ohio supports a similar conclusion. In the case of *United States v. LaLonde*, Case No. 2:19CR074, US DC SD OH, J. Graham, the defendant plead guilty to one count of 26 U.S.C. § 7206(2) and was a CHC I.  The tax loss was $330,279.71and the total adjusted offense level was 15, Zone "D" of the guidelines which recommends a sentencing range of 18-24 months.  The Defendant made full restitution which was agreed with the government to be $165,000.  The defendant in that case was younger and in better health than Mr. Fischback and had considerable good works.  The Court sentenced Mr. LaLonde to one year of probation with the first six months on home confinement and also imposed a fine of $5,000. Given Mr. Fischback's somewhat greater age and health conditions a

15

sentence similar to that imposed in *United States v. LaLonde* would not constitute an unwarranted disparity.

Paragraph 92 of the PSR, (to which the Defendant objects)[3] does not support the proposition that a non-custodial sentence in this case would create an unwarranted disparity.  In examining the data that formulates the "result" of the Judiciary Sentencing Information Platform (JSIN) tool on the Sentencing Commission's website, several issues are apparent.  First, by the data provided itself, a significant majority of offenders in the selected cohort, sixty-four percent (64%), received sentences of probation.  Accordingly, a noncustodial sentence here would not constitute an unwarranted sentencing disparity based upon that fact alone.  Second, the lack of disparity is further supported by the fact that the information states that, when determining the average and median term of imprisonment imposed, only cases where a term of imprisonment was imposed are considered.  Sentences of probation are excluded. (JSIN Tool last paragraph). In short, the JSIN tool does not preclude a non-custodial sentence in this case.

**IV.    The Need to Provide Restitution to any Victims of the Offense**.

Mr. Fischback has paid restitution in full, almost $167,000 worth.

The payment of restitution can and should factor into determining the over- all sentencing determination in in this case.

The Supreme Court, citing a 2018 publication by the Government Accounting Office, recently noted that approximately 90% of restitution orders in criminal cases are uncollectible. *See Lagos v. United States*, 138 S. Ct. 1684, 1689 (2018). Cases in which a Defendant makes substantial restitution have been found to be so unusual as to warrant a downward departure on the basis that in so doing they exhibit and extraordinary level of acceptance of responsibility.

*See eg., United States v. Davis*, 797 F.Supp 672, 676 (DC ND IN 1992), where the court stated:

> "The court finds that such a large amount of prepaid restitution is a circumstance which is highly unusual, and is present in this case to a degree substantially in excess of that which is ordinarily involved in sentencing considerations for similar convictions.  Although the defendant's restitution was not paid in full prior to the issuance of the indictment, the court finds that his extraordinary amount of restitution does constitute "super acceptance of responsibility" which warrants departure.  In light of the unusual circumstances of the prepayment of such a large restitution amount, the court finds that the guideline level attached to that factor is inadequate.  Thus the court will depart from the guideline range to impose a reasonable sentence.

> Normally, in property offenses such as mail fraud, the guidelines dictate level increases for the amount of loss, regardless of how much value is returned to the victim.  However, in this case, the court finds that based upon the highly unusual $800,000 restitution, a logical and reasonable basis for the extent of the departure from the guidelines is to eliminate the level increase which would have been assessed for the estimated loss range of between $500,000 and $800,000. The guidelines specific offense characteristic criteria indicate the base offense level should be increased by "eight" levels due to this agreed estimate of the amount of loss."  U.S.S.G. § 2F1.1(b)(1)(I).  Therefore, the court will depart from the recommended guidelines sentence level by decreasing that level by the "eight" levels assessed for the amount of loss."

Here, Mr. Fischback's payment of the restitution supports a below guidelines

sentence.

## V.    A Variance and/or a Departure is Warranted in this Case.

"It has been uniform and constant in the federal judicial tradition for the sentencing judge

to consider every convicted person as an individual and every case as a unique study in the

human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to

ensue." *Koon v. United States*, 518 U.S. 81, 113, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996).

Underlying this tradition is the principle that "the punishment should fit the offender and not

merely the crime." Williams, 337 U.S., at 247, 69 S. Ct. 1079, 93 L. Ed. 1337; *see also*

---

3 Paragraph 92 was not in this form in the First Disclosure Draft of the PSR.

17

*Pennsylvania ex rel. Sullivan v. Ashe,* 302 U.S. 51, 55, 58 S. Ct. 59, 82 L. Ed. 43 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender"). Achieving that type of individualized sentencing requires consideration of a potentially infinite number of factors which may warrant a departure. *Koon v. United States*, 518 U.S. 81 (1996) makes clear that a court may not categorically exclude the consideration of any one factor, and that to do so would be a transgression of the policymaking authority vested in the Commission. *Id.* at 106-07. A court is strictly limited to determining merely "whether the Commission has proscribed . . . consideration of the factor," and if not, "the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." *Id.* at 109; *accord United States v. Mendoza*, 121 F.3d 510, 513 (9th Cir. 1997); *United States v. Core*, 125 F.3d 74, 76-77 (2d Cir. 1997 ) ("The Guidelines themselves make clear that a court should consider in every case, not only in rare circumstances, whether a departure is appropriate" and "absent express prohibition, a sentencing court is 'free to consider in an unusual case whether or not the factors that make it unusual . . . are present in sufficient kind or degree to warrant a departure'") (citations omitted), *cert. denied sub nom. United States v. Reyes*, 522 U.S. 1067 (1998); *United States v. Brock*,108 F.3d 31, 34 (4th Cir. 1997) ("The unmistakable teaching of Koon is that only those factors on which the Commission has forbidden reliance . . . never may provide an appropriate basis for departure. All others potentially may provide a basis for departure under appropriate circumstances.") In this case, there are three bases that warrant variance or departure above and beyond the factors under

18

18 U.S.C. § 3553.  These may be considered separately or in combination and "aggregated" to support a variance or departure. *See, United States v. Coleman*, 188 F.3d 354, 359-360 (6th Cir. 1999).

> **1.     A Variance is warranted to Prevent Harm to Mr. Fischback's Employees.**

A sentence of incarceration would not only affect Mr. Fischback and his family, it would severely cripple his business, harming the eight (8) full-time and many other part-time employees and contractors and clients who have all come to rely upon him.

Prevention of the destruction of a defendant's business has long been specifically recognized as an appropriate ground for departure pre-*Koon v. United States*, 116 S. Ct. 2035 (1996), and, may also be the basis for a variance *post-Koon*.  In the case of *United States v. Olbres*, 99 F.3d 28 (1st Cir. 1996), the court analyzed whether the destruction of a business as a hardship, in the form of loss of jobs by innocent employees.  The court noted that:

> As *Koon* holds that job loss by the defendant resulted in his incarceration cannot be categorically excluded from consideration.  We think it follows that job loss to innocent employees resulting from incarceration of the defendant may not be categorically excluded from consideration.  Further, the rejected link between the socioeconomic status of the defendant and the defendant's personal job loss is, we think, stronger than the link the government posits between "vocational skills" of the defendant and certain loss of employment to innocent employees.

*Olbres*, at page 36.

"A permissible justification for downward departure ... is the need given appropriate circumstances, to reduce the destructive effects incarceration of the defendant may have on innocent third parties."  *United States v. Milikowsky*, 65 F.3d 4 (2d Cir. 1995).  This same analysis holds true for a variance.

In *United States v. Holz, supra*, the district court also considered the harm to the defendant's business together with his family circumstances.

On appeal in *Holz*, the government unsuccessfully argued that the combination of factors were not cumulatively sufficient to justify a departure. *Holz*, at pg. 940.  The Sixth Circuit, citing *Milikowsky* and *Olbres* with approval found that:

> [F]amily circumstances and business impact are each 'present to a substantial degree.'  Furthermore, we conclude that the likely impact of Defendant's incarceration on his family, and its likely impact on his business, 'taken together, make [this] case an exceptional one." We therefore hold that the downward departure was not erroneous. (Citations omitted.)

*Holz*, at 941.

In this case, the threat to the employees of destruction of the business is significant.  The negative impact Mr. Fischback's absence would have on the business is obvious.  Without Mr. Fischaback's project management skills, a lack of supervision could lead to not only quality issues, but significant safety issues.  Mr. Fischback's incarceration could also cause financial ruin for the Companies as he is the guarantor of all of financial obligations of the Company.  Clearly, Mr. Fischback's post offense rehabilitation coupled with the possible destruction of his business and consequential harm to the employees, a variance is warranted.  This is especially true when the factors are combined as they were in *Holz*.  Aggregation of factors is recognized and permitted.  *See, United States v. Coleman*, 188 F.3d 354, 359-360 (6th Cir. 1999).  Viewing Mr. McNamara's circumstances as a whole, a variance to a sentence that does not include incarceration is warranted under the Guidelines.

**2.      Mr. Fischback's Post Offense Rehabilitation Warrants a Variance or Departure.**

Pre-sentence rehabilitation is a permissible ground for a variance.  *See, United States v. Carruthers*, 28 Fed. Appx. 405, 2002 U.S. App. LEXIS 894 (6th Cir. 2002), *citing United States v. Rudolph*, 190 F.3d 720 (6th Cir. 1999).  Supreme Court authority emphasizes the importance of encouraging and rewarding rehabilitation, with the important goal of restoring offenders to complete freedom and useful citizenship. *Pepper v. United States*, 131 S. Ct. 1229, 1239-43, 179 L. Ed. 2d 196 (2011) (post-sentencing rehabilitation "may be highly relevant to several § 3553(a) factors" and support downward variance)  In fact, in *Pepper, t*he Supreme Court specifically held that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range."

> *Pepper v. United States,* 562 U.S. 476, 481, 131 S. Ct. 1229, 1236, 179 L. Ed. 2d 196, 208 (2011)

In this case, Mr. Fischback has an entirely different life then he did at the time of these offenses.  He has been rehabilitated already and has returned to useful citizenship. Mr. Fischback no longer works with his brother.  He has squared up with his brother.  He has undertaken his own business and he is employing others and helping others through their difficulties with the understanding of someone who has righted his own ship after his own struggles. (See, Letter of Bill Brasili, Appendix A, # 3).  He has changed his associations for the better.  Finally, he has moved far away from the obvious yard markers of competition with his twin brother. This offense would not have occurred in a different setting and given that he will not be in that setting again, it will not occur again.  The somewhat unique nature of what happened here and Mr.

21

Fischback's complete change in direction almost assures it. Accordingly, a variance is warranted under Section 3553(a) in this case to a non-custodial sentence. *United States v. Hairston*, 502 F.3d 378 (6th Cir. 2007)(approving 8 level departure/variance for defendant who had extricated himself from the drug trade based upon post-offense rehabilitation)

## CONCLUSION

Considering the factors set forth in 18 U.S.C. § 3553, and/or the grounds for a variance and/or a departure, it is respectfully submitted that a sentence of probation with a possible component of home confinement, would reflect the seriousness of the offense, provide just punishment and adequately meet the goals of deterrence, retribution and rehabilitation.   Such a sentence would also be sufficient, but not greater than necessary to comply with the purposes set forth 18 U.S.C. § 3553 and satisfy the Court's obligation to consider the advisory guidelines.

Respectfully submitted,

*/s/ J. Scott Broome*
J. Scott Broome (0042164)
J. SCOTT BROOME & ASSOCIATES CO.
1501 Chagrin River Road
Gates Mills, Ohio 44040
Phone: (440) 448-5142
Facsimile: (440) 423-1798
sbroome@broomelpa.com
ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing Sentencing Memorandum will be served via the

Court's Electronic filing system upon the persons listed therein.

/s/ J. Scott Broome
J. Scott Broome